IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Respondent, | § | |
| | § | |
| v. | § | CRIMINAL NO. H-00-874 |
| | § | CIVIL NO. H-05-800 |
| FRANCISCO ORTIZ, | § | |
| | § | |
| Petitioner. | § | |

## ORDER

Pending before the Court are Francisco Ortiz's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civil Document No. 1; Criminal Document No. 53), Petition for Permission to File Delayed Initial § 2255 (Criminal Document No. 54), and Government's Opposition to Petition for Permission to File Delayed Initial § 2255 and Motion for Summary Judgment (Criminal Document No. 58).   Having considered the motions, submissions, and applicable law, the Court determines that Ortiz's motions should be denied and the Government's motion should be granted.

## BACKGROUND

In May of 2000, Ron Shelkey ("Shelkey"), a special agent with the Drug Enforcement Administration,  followed Armando Resendez ("Resendez"),  a man he believed to be involved in the storage of narcotics, to Francisco Ortiz's ("Ortiz") gift

shop.  Shelkey observed Resendez and Ortiz conversing in front of the gift shop and watching passing vehicles.  Ortiz placed a bean bag chair and a gym bag into the back of a pickup truck, got into the truck, and, with Resendez, departed from the gift shop. Soon after, Houston police officers stopped the truck for a traffic violation.  The officers searched the truck with Ortiz's consent and discovered bundles of United States currency inside the gym bag.  A police K-9 drug dog later detected cocaine in both the gym bag and the bean bag chair.  When officers searched Ortiz's gift shop, they found three bricks of cocaine weighing 2.6 kilograms.

On December 11, 2000, Ortiz was indicted on charges of aiding and abetting in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(ii) and conspiring with others to possess with intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(B)(ii).  Ortiz pleaded guilty to both charges on March 22, 2001.  The Court sentenced Ortiz to a term of 208 months imprisonment for each offense, to be served concurrently, five years of supervised release, and imposed a $200 special assessment fee.  Ortiz appealed his sentence to the United States Court of Appeals for the Fifth Circuit. Although the United States Court of Appeals for the Fifth Circuit remanded Ortiz's case for re-sentencing, Ortiz nevertheless filed a petition for writ of certiorari with the United States Supreme

Court.[1]  The Supreme Court denied Ortiz's petition on January 13, 2003.  On remand, the Court re-sentenced Ortiz to 189 months imprisonment, but did not alter Ortiz's term of supervised release.  On December 8, 2004, Ortiz sent a letter to the Court requesting information on the status of a writ of habeas corpus allegedly filed on his behalf.  When the Court did not respond, Ortiz submitted a second request for information on January 5, 2005.  Thereafter, the Court informed Ortiz that no petition had been filed.  On March 10, 2005, Ortiz asked the Court for permission to file a § 2255 writ of habeas corpus despite the fact that the statute of limitations on filing such a motion had run.[2]

In his motion to file a delayed § 2255 motion, Ortiz claims he hired an attorney to file a § 2255 motion on his behalf and had, in fact, been instructed by the attorney's secretary that the attorney was awaiting a response from the Court.  Ortiz asserts he should be able to file a "delayed" petition for a writ of habeas corpus because his attorney's misrepresentation with respect to filing warrants the application of equitable tolling.  With regard to the substantive issues raised in the § 2255 motion, Ortiz claims (1) his trial counsel gave him erroneous advice due to counsel's failure to investigate

---

[1]  The Fifth Circuit remanded Ortiz's case for re-sentencing because his criminal history score improperly included an offense occurring more than ten years prior to the current offense.

[2]  Section 2255 has a one-year statute of limitations.  *Fisher v. Johnson*, 174 F.3d 710, 712 (5th Cir. 1999).

the elements of the crimes to which Ortiz pleaded guilty and failed to inform Ortiz of the charges in the indictment; (2) the Court should not have accepted Ortiz's guilty plea because a factual basis supporting the plea was lacking; and (3) the Court unconstitutionally enhanced his sentence based on factors that were not submitted to a jury.

<u>LAW AND ANALYSIS</u>

To obtain collateral relief under 28 U.S.C. § 2255, Ortiz "must clear a significantly higher hurdle" than the standard that would exist on direct appeal. *United States v. Frady*, 456 U.S. 152, 166 (1982). Courts review a § 2255 motion under the "cause and actual prejudice standard" articulated in *Davis v. United States*, 411 U.S. 233, 242-44 (1973). *Frady*, 456 U.S. at 168. Under this standard, a convicted defendant must show both "1) cause excusing his double procedural default and 2) actual prejudice resulting from the errors of which he complains" in order to obtain collateral relief. *Id.* Section 2255 is reserved for constitutional or jurisdictional errors or errors that could not have been raised on direct appeal and, if not corrected, would result in a complete miscarriage of justice. *United States v. Capua*, 656 F. 2d 1033, 1037 (5th Cir. 1981).

A. <u>Equitable Tolling</u>

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), enacted in

1996, established a one-year statute of limitations for prisoners wishing to initiate habeas proceedings under § 2255. *Fisher*, 174 F.3d at 712.  Section 2255 provides, in relevant part:

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of –
>
> 1)   the date on which the judgment of conviction becomes final;
>
> 2)   the date on which the impediment to making a motion created by governmental action in violation of the constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> 3)   the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> 4)   the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255 (2000).

Thus, Ortiz had one year to file a § 2255 petition after final judgment.  *Id.* Ortiz's judgment became final on January 13, 2003 when the Supreme Court denied certiorari.  *See Roberts v. Cockrell*, 319 F.3d 690, 692 (5th Cir. 2003).  Therefore, Ortiz's petition was filed approximately one year after the statute of limitations had run. Ortiz does not dispute the untimeliness of his petition.  Rather, he asks the Court to

"toll" the statute of limitations due to the unique circumstances of his case.

Because denying a petitioner the opportunity to file a first habeas motion in effect denies him any mode of redress, this denial is a particularly serious matter. *Lonchar v. Thomas,* 517 U.S. 314, 324 (1996).   As such, courts have created an exception to the one-year statute of limitations known as equitable tolling. *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998).  The doctrine of equitable tolling provides that the one-year limitation will be extended in "rare" and "exceptional" circumstances where a failure to do so would preserve inequity.  *Fisher*, 174 F.3d at 713; *Davis*, 158 F.3d at 811.  Courts engage in a case-by-case analysis to determine whether the facts of a particular case warrant the application of equitable tolling. *Id.*

As noted, equitable tolling is applied only in "rare" and "exceptional" circumstances.  *Davis,* 158 F.3d at 811.  For example, attorney negligence will normally not trigger equitable tolling.  *Cousin v. Lensing*, 310 F. 3d 843, 849 (5th Cir. 2002) (holding a petitioner was not entitled to equitable tolling when his habeas petition was filed past the statute of limitations period because his attorney failed to pay the filing fee).   Furthermore, courts will not toll the statute of limitations unless the petitioner diligently pursues his habeas relief.  *Fisher*, 174 F.3d at 713 ("Equity is not intended for those who sleep on their rights.").  However, in circumstances where the attorney makes an affirmative misrepresentation regarding the status of the habeas

petition, the statute may be tolled if the petitioner reasonably relies on the attorney's misrepresentation and is not put on notice as to the need to make further inquiry. *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir. 2002).

Here, Ortiz enlisted the aid of an attorney to file his § 2255 motion in April 2003. Although Ortiz was not able to contact his attorney, the attorney's secretary informed Ortiz in November 2003 that his attorney was awaiting a response from the Court before taking further action. After this communication, Ortiz did not contact the Court regarding his petition until December 2004, at which time he learned his attorney had not filed a petition. Ortiz asserts he is entitled to equitable tolling because the secretary misinformed him as to the status of the petition and implied his attorney had already filed the petition with the Court.

Even if Ortiz reasonably relied on the secretary's statement, Ortiz did not diligently pursue habeas relief. After the secretary implied the attorney had filed a habeas petition with the Court, Ortiz did not contact the Court for over a year. Although Ortiz alleges he attempted to contact his attorney during this time, his attorney did not respond. The attorney's failure to contact Ortiz should have put Ortiz on notice as to the need to inquire with the Court regarding his petition. Because of Ortiz's lack of diligence in pursuing his rights, he does not present a rare and exceptional circumstance that necessitates equitable tolling. *Fisher*, 174 F.3d at 713.

Consequently, Ortiz's claim is untimely under the one-year statute of limitations. *Id.* Despite the Court's determination that Ortiz's claim is barred by the one-year statute of limitations, the Court will address Ortiz's substantive claims.

B.  Ineffective Assistance of Counsel

Ortiz next claims infringement on his Sixth Amendment right to effective counsel.  Specifically, Ortiz contends (1) his attorney advised him to plead guilty although the attorney was ignorant of the elements of the crimes to which he was pleading, (2) his attorney did not inform him of the specific charges contained in the indictment, and (3) his plea was involuntary because he pleaded guilty without full knowledge of the nature of the charges.  It is well-settled that the Sixth Amendment guarantees a minimal level of attorney competency for persons accused of a crime. *McMann v. Richardson*, 397 U.S. 759, 771 (1970).  To succeed on an ineffective assistance of counsel claim, the petitioner must show: (1) the counsel's performance was deficient, falling below an objective standard of reasonableness and (2) the attorney's deficient performance prejudiced the petitioner's case.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The petitioner must overcome the strong presumption that counsel's performance falls within the wide range of reasonable professional conduct.  *United States v. Samuels,* 59 F.3d 526, 529 (5th Cir. 1995); *Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993).  To establish prejudice in cases

8

involving a guilty plea, the petitioner must show he would not have pleaded guilty if his counsel had not been deficient. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Moreover, habeas petitioners who claim ineffective assistance of counsel based on failure to investigate must show an investigation would have altered the attorney's plea recommendation and the petitioner would have heeded that advice. *Id.* A petitioner's mere allegation that he would have insisted on a trial is insufficient to establish prejudice. *Id*. Instead, a determination of prejudice is based in part upon the probability the petitioner would have met with success at trial. *Id*.

With respect to his first two claims, Ortiz must first show that his attorney's failure to investigate and inform him fully of the charges was deficient. *Strickland*, 466 U.S. at 687. Courts have recognized an attorney's unreasonable failure to investigate the evidence of a case as deficient under the *Strickland* test. *See, e.g., Soffar v. Dretke*, 368 F.3d 441, 478 (5th Cir. 2004); *Lockett v. Anderson*, 230 F.3d 695, 711 (5th Cir. 2000). However, Ortiz has the burden to prove both prongs of the *Strickland* test, and Ortiz has not demonstrated how his attorney's conduct has prejudiced Ortiz's case. *Strickland*, 466 U.S. at 687.

As previously mentioned, in order to establish prejudice, Ortiz must show his attorney's advice probably would have differed had the attorney investigated the elements of the offense. *Id.* at 692. The elements of aiding and abetting under 18

U.S.C. § 2 are: (1) "the defendant associated with [the] criminal venture, (2) [the defendant] purposefully participated in the criminal venture, and (3) [the defendant] sought by his or her actions to make the venture succeed." *See United States v. Stewart*, 145 F.3d 273, 277 (5th Cir. 1998). The "criminal venture," in this instance, is the distribution of cocaine. Ortiz admitted under oath at his rearraignment that he exited the gift shop on June 12, 2000 carrying a bean bag chair and a gym bag containing United States currency. Both the bean bag chair and the gym bag were later identified by a police K-9 as containing traces of cocaine. Ortiz further acknowledges police officers found three bricks of cocaine at Ortiz's place of business bearing Ortiz's fingerprints. Sufficient evidence existed for the Court to find that Ortiz, traveling with bundles of United States currency and a bean bag chair containing traces of cocaine, did so in furtherance of a criminal venture to distribute cocaine. The fact that he stored large quantities of cocaine in his store indicates Ortiz had the requisite intent. When Ortiz placed the bean bag and gym bag into the truck and proceeded to accompany Resendez to the destination, he was taking action to ensure the success of the criminal venture.

The elements of conspiracy under 21 U.S.C. §§ 846 and 841(a)(1),(b)(1)(B)(ii) are: (1) two or more persons reach an agreement to possess with intent to distribute, (2) the defendant knew of the unlawful purpose of the agreement, (3) the defendant

joined in the agreement willfully, and (4) the violation involved 500 grams or more of a mixture or a substance containing a detectable amount of cocaine.  *United States v. Rosas-Fuentes*, 970 F.2d 1379, 1381-82 (5th Cir. 1992).  Like the charge of aiding and abetting, based on the factual basis and Ortiz's affirmation of the facts at his rearraignment, the Court finds sufficient evidence existed to demonstrate Ortiz's actions of transporting United States currency and storing large quantities of drugs were in pursuance of an agreement to distribute narcotics to others.  Therefore, ample evidence exists to support Ortiz's plea of guilty.  Ortiz does not provide the Court with any evidence to show, had his attorney investigated the elements, he would not have pleaded guilty.

In addition, Ortiz is also unable to establish prejudice because he had actual knowledge of the elements of the offense.  After the Court informed Ortiz of the specific elements needed to establish guilt at trial, Ortiz was apprised of the possible sentence, and Ortiz expressly communicated an understanding of the nature of the charge and possible penalties pending against him.  Because the Court informed Ortiz of the elements of both aiding and abetting and conspiracy before he pleaded guilty, his attorney's alleged failure to relay similar information likely did not prejudice his case.  Further, Ortiz has not shown he would not have pleaded guilty despite his attorney's performance.  Therefore, Ortiz's first two claims of ineffective assistance of counsel

fail.

Finally, Ortiz's claim of ineffective assistance against his attorney is further complicated by the fact that he pleaded guilty to the crime. When one enters a plea of guilty, he waives his right to later assert errors in the proceedings which occurred before his plea and are not related to the voluntariness of the plea. *United States v. Jackson*, 659 F.2d 73, 74 (5th Cir. 1981). Therefore, even if Ortiz had a valid claim for ineffective assistance of counsel, his claim would be invalid by virtue of his guilty plea unless the ineffective assistance rendered his plea involuntary. *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000). It is the attorney's duty to inform his client as to the applicable facts and law so the client may make an intelligent decision regarding his plea. *Hobbs v. Blackburn,* 752 F.2d 1079, 1081 (5th Cir. 1985). If the attorney fails to give "reasonably competent advice," the petitioner may attack the plea as involuntary. *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980). The words and actions of the defendant in the proceedings may suffice to establish voluntariness in the absence of evidence to dispute the voluntary nature of the plea. *Smith v. Estelle,* 711 F.2d 677, 681 (5th Cir. 1983). Because "there is a strong presumption of verity to declarations made in open court," if the proceedings alone do not establish the voluntariness of the plea, the defendant bears a heavy burden to prove his plea was involuntary. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *United States v. Diaz,* 733

F.2d 371, 373 (5th Cir. 1979).

Presumably, Ortiz argues his plea was involuntary because he was inadequately informed by his attorney as to the elements of the crime to which he pleaded guilty. The Supreme Court held a lack of notice regarding the nature of the crime is grounds for collateral attack. *Henderson v. Morgan*, 426 U.S. 637, 645 (1976). Nevertheless, Ortiz still may not claim ignorance because, before accepting the his plea, the Court explained the charges and elements of both conspiracy and aiding and abetting pursuant to the Federal Rules of Criminal Procedure. FED. R. CRIM. P. 11. Though Ortiz now claims he thought he was pleading guilty to charges other than aiding and abetting and conspiracy, he indicated at his rearraignment under oath and in open court he understood the charges against him, the possible penalties he faced, and he was waiving his right to later assert non-jurisdictional errors. Further, Ortiz affirmatively stated he wished to enter a plea of guilty.

Subsequent doubts as to the desirability of one's plea are insufficient to render a plea involuntary. *United States v. Hoskins*, 910 F.2d 309, 311 (5th Cir. 1990). Because Ortiz has offered no proof he pleaded guilty involuntarily and the transcript indicates voluntariness, Ortiz's claim of ineffective assistance of counsel is denied.

C.  Insufficiency of Evidence

Similar to his ineffective assistance of counsel argument, Ortiz contends his

guilty plea is invalid because the facts do not establish the elements of the crimes he is charged with committing.  Acceptance of the plea in spite of the lack of factual support violates the Federal Rules of Criminal Procedure.  FED. R. CRIM. P. 11.  Under Rule 11, the factual basis of a plea should be "specific enough to allow the court to determine if the defendant's conduct was within the ambit of that defined as criminal." *United States v. Johnson*, 546 F.2d 1225, 1226 (5th Cir. 1977).  However, the court will not offer a defendant relief unless the defendant can show he was prejudiced by an error in the proceedings.  *United States  v. Patterson*, 739 F.2d 191, 193 (5th Cir. 1984).  Also, a court will not invalidate a plea based on factual insufficiency unless the judge was "clearly erroneous" when he accepted the defendant's guilty plea. *Johnson*, 546 F.2d at 1226.  As mentioned above, a sufficient factual basis existed for accepting Ortiz's guilty plea, and Ortiz has failed to allege any facts demonstrating prejudice to his case.  Therefore, the Court's acceptance was not clearly erroneous.

Although the Federal Rules of Criminal Procedure  require that the judge have a factual basis for accepting a plea, the guilty plea waives all complaints other than those which relate to the voluntary nature of the plea.  *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980) ("If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without coercion, the guilty plea will be upheld on federal review.").  Therefore, in

order to vacate the sentence due to insufficient evidence, the petitioner must show that the guilty plea was involuntary. *Id.* Here, Ortiz fails to do so. Accordingly, Ortiz fails to establish constitutional error in the Court's acceptance of Ortiz's plea.

D. *Booker/Apprendi* Argument

Finally, Ortiz claims constitutional error based on judicial enhancement of his sentence, because of the Court's reliance on factors not submitted to a jury. Specifically, Ortiz interprets *Apprendi v. New Jersey* to mean that all factors which increase the sentence should be decided by a jury. *Apprendi v. New Jersey*, 530 U.S. 466, 481 (2000). However, the Supreme Court's decision in *Apprendi* does not require that all sentencing matters be submitted to a jury. *Id.* at 481. Rather, *Apprendi*, requires only that the sentence not be enhanced beyond the statutory maximum due to factors not decided by a jury. *Id.*; *United States v. Doggett*, 230 F.3d 160, 164 (5th Cir. 2000). Here, the Court sentenced Ortiz to 189 months, which is below the statutory maximum of forty years for each charge. Therefore, *Apprendi* does not mandate a reduction of Ortiz's sentence because it is not unconstitutional for a judge to enhance Ortiz's sentence so long as the sentence remains within the statutory range. *Apprendi*, 530 U.S. at 481.

Ortiz next argues his sentence should be altered in light of the Supreme Court's ruling in *United States v. Booker*, 125 S.Ct. 738, 744 (2005). Generally, new

constitutional rules of criminal procedure will not be applied retroactively to cases on collateral review. *Teague v. Lane,* 489 U.S. 288, 310 (1989). In *Booker*, the Supreme Court of the United States specifically stated *Booker* would apply to cases on direct review. *Booker*, 125 S.Ct. at 769. Moreover, the United States Court of Appeals for the Fifth Circuit recently found that *Booker* is not to be applied retroactively to cases on collateral review. *In re Elwood*, 408 F.3d 211, 211 (5th Cir. 2005). Therefore, the *Booker* decision will not impact Ortiz's § 2255 habeas petition.

Even if *Booker* were applied retroactively, it would not affect the outcome of Ortiz's sentence. *Booker* merely extended the ruling in *Apprendi* to apply to the United States Sentencing Guidelines. *Booker*, 125 S. Ct. at 742. When applying the sentencing guidelines, judges can no longer give a sentence above the statutory maximum for factors not decided by a jury. *Id.* As mentioned above, the sentence imposed upon Ortiz does not exceed the statutory maximum sentence available for these crimes. Well-within the acceptable range, the Court will not invalidate Ortiz's sentence due to alleged *Apprendi* or *Booker* concerns. Given the foregoing, the Court hereby

ORDERS that Ortiz's Motion to Vacate, Set Aside, or Correct Sentence (Civil Document No. 1; Criminal Document No. 53) and Petition for Permission to File Delayed Initial § 2255 (Civil Document No. 54) are DENIED and Government's

16

Opposition to Petition for Permission to File Delayed Initial § 2255 and Motion for

Summary Judgment (Criminal Document No. 58) is GRANTED.

SIGNED at Houston, Texas, on this 16th day of June, 2005.

_____

DAVID HITTNER

United States District Judge

17